## Eugene Sage v. Town of Brighton

[565 A.2d 1338]

No. 88-447

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed August 4, 1989

*Eugene Sage*, pro se, Island Pond, Plaintiff-Appellant.

*Moore & Donnellan*, Island Pond, for Defendant-Appellee.

**Dooley, J.** This is a consolidated pro se appeal by taxpayer from decisions of the State Board of Appraisers affirming the values assigned to separate properties in the Town of Brighton by its Board of Civil Authority (BCA). We affirm in both cases.

## I. *The Cross Street Property*

The first property is a commercial three-story building on Cross Street consisting of 12,822 square feet situated on .125 acres of land in the Town's business district and assessed by the listers and the BCA at $121,800. Taxpayer argues first that the Board miscalculated the per-square-foot value of this property and of three comparable properties by· using as a numerator in each case the aggregate value of land and buildings, and using as denominator the square footage of the buildings only. The formula urged by taxpayer would have divided the value of the buildings alone by the square footage of each building. For example, the Brighton Garage, which was used as a comparable, consisted of 7642 square feet of floor space on .747 acres of land and was assessed for a total of $89,500, which the Board stated "computes to a value of slightly in excess of $11.50 per square foot of space." Taxpayer

points out that the building was valued at only $66,381 and that if the building valuation (rather than the total value of building and land) is used as the numerator, the per-square-foot valuation of the building would fall to $8.68.

Taxpayer concedes that the Board's approach to the three comparables and to his own property was consistent, but argues that since the land value of his property was a smaller fraction of total value than the land-to-total-value ratios of the comparable properties, the error in methodology made his relatively low per-square-foot valuation of $9.50 seem reasonable, when compared, e.g., with the Brighton Garage figure of more than $11.50. This theoretical analysis, even if correct, did not demonstrate prejudice to taxpayer. The findings make clear that the Board did not arrive at its valuation of taxpayer's property via its determination of per-square-foot values, but merely noted those values as an alternative expression of comparable characteristics already recited on the record.

■ While taxpayer is correct that the unusual methodology tended disproportionately to increase the per-square-foot valuation of properties with a relatively high land value in relation to total internal building space, it is not clear that his alternative methodology entitles him to relief. For example, if we use taxpayer's alternative methodology in evaluating the Brighton Garage property, we find that the garage property has a higher per-square-foot value than the subject property. Taxpayer's criticism does not include the most comparable property in the Board's view, the Gervais property, a parcel of .092 acres (smaller than the subject parcel) with a three-story building of 5853 square feet. This building has the same quality rating ("40% good") as the subject building. The building area of the subject property is nearly 220% of the building area of Gervais property and was valued at only about 175% of the value of the Gervais property.

■ Taxpayer also complains that the subject property was insufficiently depreciated in relation to the comparable properties. The Board took due note of the structural and other problems of the subject property and reflected those conditions in its valuation. Taxpayer's own bank appraisal set the property value at $120,000, evidence which taxpayer seeks to

discount by arguing that it is based on the presence of functioning business tenants who would not be present on sale. We believe that the Board properly considered the appraisal, which reflected the subject property as it was, not as it might be. The fact that the premises are rented and presumably producing income is a proper factor to consider in establishing an appraised value. *Board of Assessors of Brookline v. Buehler*, 396 Mass. 520, 522–23, 487 N.E.2d 493, 495 (1986); cf. *Town of Barnet v. New England Power Co.*, 130 Vt. 407, 412, 296 A.2d 228, 231 (1972) ("income approach" is proper method of determining fair market value).

## II. *The Pleasant Street Property*

Taxpayer's second property is known as the "farm property" and consists of a large, two-story farmhouse of 2624 square feet and a barn on 3.51 acres of land. The property was assessed at $80,300. The principal ground for appeal is that the subject property was in poor condition, unlike comparable properties, and that the increase in valuation over an earlier Town figure and one by a bank "a couple of years ago" was greater than was justified by the evidence.

■ Taxpayer's case on the merits boils down to a difference with the *Board* over comparables, and in the absence of a more explicit argument that the *Board* erred, we must presume the *Board's* view of the disputed evidence to be correct. *Sondergeld v. Town of Hubbardton*, 150 Vt. 565, 571, 556 A.2d 64, 68 (1988). We note the subject property is in a residential area, but the comparables offered by taxpayer were not so situated. The taxpayer's house is considerably larger than at least one of the comparables. The Board viewed both the comparables and the subject property.

■ Taxpayer is correct that the Board decision fails to note that the Town's representative at the hearing stated that the BCA had lowered the listers' valuation from $80,300 to $72,800. The Town's brief does not specifically address this point, and though the Town consistently refers to the $80,300 figure, we deem taxpayer's correction to be unopposed.

*The decision of the State Board of Appraisers as to the Cross Street property is affirmed. The Board's decision as to the Pleasant Street property is amended to reflect a valuation of $72,800, and, as so amended, is affirmed.*